UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADT LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-1417-B |
| | § | |
| TAYLOR MADISON and ANGIE DICKSON, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Plaintiff ADT, LLC ("ADT")'s Motion to Compel Arbitration (Doc. 19); (2) ADT's Second Amended Petition for Order Compelling Arbitration (Doc. 39); and (3) Defendants Taylor Madison and Angie Dickson's Second Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 42). For the following reasons, the Court **GRANTS** Defendants' Motion (Doc. 42), **DENIES** ADT's Motion (Doc. 19), and **DISMISSES** ADT's Second Amended Petition (Doc. 39).

### I.

### BACKGROUND[1]

ADT provides residential and commercial alarm services, including the installation and monitoring of home security systems. Doc. 39, Second Am. Pet., ¶ 1. On February 19, 2020, Madison contracted with ADT for the installation of a security system, including security cameras, in her home. *See* Doc. 44, Pl.'s App., 7, 14. The contract between Madison and ADT contained an

---

[1] The facts are drawn from the parties' pleadings and briefs.

arbitration clause requiring the parties to arbitrate "any and all disputes between [them]." *Id.* at 11.

In April 2020, ADT informed Madison that the technician who installed Madison's security cameras, Telesforo Aviles, had accessed the cameras in her home without authorization, "potentially viewing Ms. Madison in her home." Doc. 43, Pl.'s Resp., 3. Through his employment with ADT, Aviles gained access to 220 customer accounts, enabling him to view customers in their homes through security cameras. Doc. 39, Second Am. Pet., ¶ 9. According to Madison, Aviles illegally accessed the cameras in her home "approximately 139 times between February 25, 2020 and March 25, 2020." Doc. 42, Defs.' Second Am. Mot., 3. ADT terminated Aviles's employment, and Aviles currently faces federal criminal charges. *See* Doc. 39, Second Am. Pet., ¶ 24. Madison sent ADT a "Notice to Preserve Evidence," requesting that ADT preserve evidence related to Aviles's conduct and stating "that litigation will likely ensue." Doc. 44, Pl.'s App., 21 (emphasis omitted).

On May 13, 2020, Madison filed suit against Aviles, in his personal capacity, in Texas state court. Doc. 42, Second Am. Mot., 11. Madison's state-court petition seeks an injunction against Aviles preventing him from altering or destroying his equipment and from coming within 200 yards of her residence. *Id.* at 14–15. She also seeks twelve categories of monetary damages from Aviles. *Id.* at 15–16. Through the discovery process in the state-court action against Aviles, Madison served ADT with a third-party subpoena seeking "information about the criminal actions of ADT employee Telesforo Aviles and ADT's knowledge of those actions." Doc. 44, Pl.'s App., 47.

In response to the subpoena, ADT filed the pending suit in this Court against Madison and her mother, Dickson.[2] ADT's Second Amended Petition, the live pleading in this matter, seeks an

---

[2] After serving the subpoena and after ADT filed its First Amended Petition (Doc. 8), Madison amended her state-court complaint to add her mother, Angie Dickson, as a plaintiff. Doc. 42, Defs.' Second

order: (1) compelling Madison to arbitrate any and all claims she may have against ADT; (2) enjoining Madison from conducting pre-litigation discovery against ADT; and (3) enjoining the state court from enforcing any subpoena issued by Madison against ADT. Doc. 39, Second Am. Pet., ¶¶ 1–3. On August 18, 2020, ADT intervened in the state-court action. Doc. 45, Defs.' Reply, ¶¶ 3–4. Madison now seeks to dismiss ADT's petition on the grounds that the Court lacks subject matter jurisdiction to compel arbitration.[3] Doc. 42, Defs.' Second Am. Mot., 5–7. ADT filed a response (Doc. 43) to the motion on August 25, 2020, and Madison filed a reply (Doc. 45) in support of her motion on September 2, 2020. Upon the Court's order (Doc. 48), the parties filed supplemental briefs (Docs. 49 and 50) to address the amount-in-controversy requirement of 28 U.S.C. § 1332. The motion is ripe for review.

## II.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017) (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* (citation omitted). And "[i]f the record does not contain sufficient evidence to show that subject matter jurisdiction exists, 'a federal court does not have jurisdiction over the case.'" *Id.* (quoting

---

Am. Mot., 3–4. For the sake of simplicity, because Dickson "is not a signatory to the ADT Contract," Doc. 39, Second Am. Pet., ¶ 20, and because ADT's underlying disputes with Dickson are the same as its disputes with Madison, this Order hereinafter refers to Defendants collectively as "Madison."

[3] Madison also claims that dismissal is proper because ADT failed to join Aviles, a necessary party. Doc. 42, Defs.' Second Am. Mot., 8–9. Because the Court decides the motion on jurisdictional grounds, it does not reach this argument.

*Howery*, 243 F.3d at 916).

Section 4 of the Federal Arbitration Act ("FAA") authorizes a United States district court to enforce a valid arbitration agreement if one of the parties to the agreement petitions the court to do so. 9 U.S.C. § 4. However, the FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (cleaned up and quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008)). Pursuant to § 4, the petitioner must file in a "United States district court which, save for [an arbitration] agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties." § 4. Accordingly, "a district court must 'look through' a § 4 petition to determine whether the district court would have jurisdiction over the underlying substantive controversy." *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 923 (5th Cir. 2017) (citing *Vaden*, 556 U.S. at 53, 62). If, absent the arbitration agreement, a federal court would lack an independent basis for subject matter jurisdiction over the underlying dispute, the court lacks jurisdiction to compel arbitration. *Id.* ("*Vaden*'s holding necessarily implies that any of the reasons that a federal court may lack subject matter jurisdiction over the underlying dispute—*e.g.*, ripeness—would similarly prevent a district court from having jurisdiction to compel arbitration."). "Such independent bases include diversity of citizenship under 28 U.S.C. § 1332 or federal question jurisdiction under 28 U.S.C. § 1331." *Quezada v. Bechtel OG & C Constr. Servs., Inc.*, 946 F.3d 837, 841 (5th Cir. 2020) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32 (1983)).

## III.

## ANALYSIS

ADT invokes the Court's diversity jurisdiction and claims that "[t]his Court is authorized to hear this Petition pursuant to § 4 of the [FAA], which allows a party seeking arbitration to file a petition in federal district court." Doc. 39, Second Am. Pet., ¶¶ 4–5. However, the FAA "is something of an anomaly in the field of federal-court jurisdiction" in that it "creates a body of federal substantive law[,] . . . yet does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331[.]" *Mercury Const.*, 460 U.S. at 26 n.32. Therefore, in order to compel arbitration under the FAA, the Court must find that it has "jurisdiction over the underlying substantive controversy" by "look[ing] through" ADT's petition. *Lower Colo. River Auth.*, 858 F.3d at 923 (citing *Vaden*, 556 U.S. at 53, 62). The first step in the Court's analysis, then, is determining what the underlying controversy between ADT and Madison is. ADT identifies two underlying controversies: the state-issued subpoena and Madison's threat of litigation. *See* Doc. 39, Second Am. Pet., ¶ 24; Doc. 43, Pl.'s Resp., 6–7. The Court finds that it lacks jurisdiction over either controversy.

A.  *The Subpoena Dispute*

ADT filed its petition in direct response to the state-court subpoena, claiming that the parties should be compelled to arbitration because the subpoena "represents a controversy between ADT and Ms. Madison[.]" Doc. 39, Second Am. Pet., ¶ 24. According to ADT, the underlying dispute is the initiation of "litigation-based discovery against ADT in the form of a subpoena[.]" *Id.* Madison argues "there is no ripe case or controversy" between her and ADT because the subpoena does not trigger a dispute under the arbitration agreement. Doc. 42, Defs.' Second Am. Mot., 5–7. Indeed, much of the parties' briefing concerns whether the subpoena creates a "dispute" within the meaning of the arbitration agreement.

*See id.*; Doc. 43, Pl.'s Resp., 6–9; Doc. 45, Defs.' Reply, ¶ 10. However, even if ADT is correct that the subpoena creates an arbitrable dispute, ADT fails to show that this dispute meets the amount-in-controversy requirement of 28 U.S.C. § 1332. The Court thus lacks an independent jurisdictional basis necessary to compel arbitration. *See Vaden*, 556 U.S. at 62.

ADT is correct that a federal court may decline jurisdiction "only when it appears to a legal certainty that the claim is really for less than the jurisdictional amount." Doc. 49, Pl.'s Suppl. Br., 1–2 (emphasis omitted); *see De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). However, "[t]he party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293 (5th Cir. 2019) (citing *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003)). Therefore, the "legal certainty test" that ADT invokes applies only after ADT satisfies its burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Savage v. Hill Cnty. Pawn*, 2018 WL 7377622, at *2 (W.D. Tex. Oct. 10, 2018) ("Notwithstanding the general application of *St. Paul Mercury*'s 'legal certainty' test, there are circumstances in which the test is inapposite or inapplicable. . . . More fundamentally, the legal certainty test is tempered by the long-established principle that the burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." (cleaned up and quoting *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998))). Here, ADT fails to satisfy its initial burden of showing by a preponderance that the amount in controversy of the subpoena dispute exceeds $75,000.

The subpoena requests production of eighteen categories of documents. *See* Doc. 44, Defs.'

App., 38–49. ADT has not argued or even suggested that the cost of producing—or the cost of resisting production of—these documents would exceed $75,000. *See generally* Doc. 49, Pl.'s Suppl. Br. The Court does not independently find that it would. Because ADT fails to demonstrate that the amount in controversy is met, the Court does not have diversity jurisdiction over the subpoena dispute. 28 U.S.C. § 1332. Therefore, the subpoena dispute may not serve as a basis for the Court's jurisdiction to grant ADT's § 4 petition. *See Vaden*, 556 U.S. at 62.

B.   *The Threat-of-Litigation Dispute*

ADT further suggests that, beyond the subpoena dispute, the "threat of litigation" permits the Court to compel arbitration. Doc. 43, Pl.'s Resp., 6–7. ADT cites *Orix Credit All., Inc. v. Wolfe*, wherein the Fifth Circuit stated that "[t]he threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." 212 F.3d 891, 897 (5th Cir. 2000). If ADT were to seek declaratory relief from this Court regarding the threat of litigation, however, it would be still be required to prove jurisdiction by a preponderance of the evidence. *See Texas v. W. Publ'g Co.*, 882 F.2d 171, 175 (5th Cir. 1989) (holding that the party suing for declaratory relief "bears the burden of establishing an actual controversy . . . by a preponderance of the evidence"). ADT must therefore demonstrate that the threat of litigation is sufficiently "specific and concrete" as to give rise to a ripe controversy, *see Orix*, 212 F.3d at 897, and that the requirements for diversity jurisdiction are met—particularly the amount-in-controversy requirement. *Vaden* at 62. The Court finds that ADT fails to satisfy either requirement.

   1.   Ripeness

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300

(1998) (citation and quotations omitted). Therefore, ADT must demonstrate that Madison actually intends to litigate against it, not merely that Madison *may* litigate against it. ADT argues that the threat of litigation is specific and concrete, and therefore ripe for adjudication, due to the nature of Aviles' actions and ADT's employment relationship with Aviles. Doc. 43, Pl.'s Resp., 6–9. However, ADT conflates a threat of litigation with a general threat that Madison may assert a claim against it. This Court has little doubt that Madison has a claim against ADT. However, it is entirely possible, if not probable, that Madison will engage in arbitration, rather than litigation, with ADT. And a threat of litigation is different than a threat of arbitration.

In order to assert jurisdiction over the threat of litigation as a "controversy upon which declaratory judgment can be based," *see Orix*, 212 F.3d at 897, ADT must show by a preponderance that the threat does not "rest upon contingent future events." *Texas*, 523 U.S. at 300 (citation omitted). The threat of litigation currently rests upon Madison's future decision not to arbitrate. Therefore, ADT must show by a preponderance that Madison is unwilling to arbitrate. *See id.* To prove Madison's unwillingness, ADT states that "instituting pre-suit discovery in [a] state court proceeding is sufficient to indicate an unwillingness to arbitrate such that [a] petition to compel arbitration in federal forum is appropriate[.]" Doc. 43, Pl.'s Resp., 7 (citing *Ameriprise Fin. Inc. v. Bailey*, 944 F. Supp. 2d 541 (N.D. Tex. 2013)). ADT also points to various evidence—Madison's notice to preserve evidence, claims against Aviles, refusal to discuss arbitration with ADT, refusal to settle with ADT, and service of the subpoena—to prove Madison's unwillingness to arbitrate with ADT. Doc. 43, Pl.'s Resp., 6–9; Doc. 49, Pl.'s Suppl. Br., 2–5. The Court finds that ADT fails to meet its burden.

To start, the Court rejects ADT's application of *Bailey*. Indeed, ADT appears to deduce from *Bailey* a formal holding out of a mere fact mentioned in passing. *See Bailey*, 944 F. Supp. 2d at 543,

544 (explaining in the background section that the plaintiffs brought the present suit under the FAA in response to the defendants' state-court petition to depose the plaintiffs). Unrelated to the current matter, the legal analysis in *Bailey* focused only on whether the plaintiffs failed to join a necessary party, and whether the plaintiffs were required to produce copies of the arbitration agreements. *See id.* at 545–47. However, to the extent that *Bailey*'s fact pattern supports ADT's interpretation, the Court finds that the facts here are distinguishable. In *Bailey*, the plaintiffs sought to compel arbitration in federal court "[a]s a preemptive strike" after the defendants filed a state-court petition to depose the plaintiffs in order "to obtain testimony to investigate a potential claim." *Id.* at 543 (citation omitted). The defendants in that case had also sued the plaintiffs "[i]n a related lawsuit[.]" *Id.* In *Bailey*, the defendants had made clear their intentions to utilize the state courts for the sole purpose of pursuing their claims against the plaintiffs—with whom they had previously agreed to arbitrate. *See id.* Here, Madison's intent is not so obvious. ADT has not shown that it has filed an arbitration demand against Madison which she ignored or refused, that Madison has sought claims against ADT in court, or any other concrete evidence that Madison is actually unwilling to arbitrate.

Madison is utilizing the state court—but apparently only to pursue her claims against Aviles, not ADT. Although Madison seeks certain state-court discovery from ADT, the discovery is relevant and necessary to prosecute her claims against Aviles. The Court does not agree with ADT's assertion that Madison's use of state-court discovery necessarily indicates an unwillingness to arbitrate with ADT. To the contrary, if Madison intended to litigate against ADT, she would likely have joined ADT as a defendant in her case against Aviles, given the shared facts and ADT's relationship with Aviles. Indeed, the facts here suggest that Madison is pursuing claims against Aviles in court before engaging in arbitration with ADT. If this is the case, the subpoena is a necessary discovery tool in her

suit against Aviles, and Madison's refusal to discuss arbitration or settle with ADT at this time may be indicative of her desire to arbitrate her claims against ADT later.

ADT even claims that "common sense dictates that Ms. Madison will ultimately seek *an arbitration award* against ADT far in excess of $75,000[.]" Doc. 49, Pl.'s Suppl. Br., 3 (emphasis added). If this is true, ADT cannot also claim that a threat of litigation actually exists. Moreover, the only reason that "Madison continues to litigate two separate cases against ADT," as ADT complains, *id.*, is that ADT chose to litigate against Madison by filing the petition in this case and intervening in the other. Lastly, ADT does not assert that Madison's claims against Aviles are illegitimate, that the discovery sought from ADT is irrelevant to her claims against Aviles, or that Madison is obligated to arbitrate with Aviles. *See generally* Doc. 39, Second Am. Pet.; Doc. 43, Pl.'s Resp.; Doc. 49, Pl.'s Suppl. Br. If the Court agreed with ADT's position, it is unclear how Madison could pursue her claims against Aviles in a court of law while having access to the discovery necessary to do so.

Currently, the threat of litigation is contingent on Madison's unwillingness to arbitrate. ADT has not shown by a preponderance of the evidence that Madison is indeed unwilling. Therefore, the threat-of-litigation dispute is not ripe for this Court to consider, and the Court lacks jurisdiction to compel arbitration on this basis. *Texas*, 523 U.S. at 300; *cf. Lower Colo. River Auth.*, 858 F.3d at 923 (holding that the underlying dispute must be ripe in order to compel arbitration).

2. Amount in controversy

Even if the threat of litigation here was sufficiently specific and concrete for a § 4 petition, the Court would lack jurisdiction because ADT fails to demonstrate how the threat-of-litigation dispute involves an amount exceeding $75,000. After reviewing the initial briefing, the Court found that the parties did not adequately address whether the threat of litigation exceeds $75,000. For example,

ADT's response does not indicate what declaratory relief it would seek, nor does it explain the value of the threatened litigation. *See generally*, Doc. 43, Pl.'s Resp.; *see also Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977))). So, the Court ordered the parties to file supplemental briefs regarding the amount in controversy *between ADT and Madison*, expressly identifying the threat-of-litigation dispute. Doc. 48, Order, 2–3.

ADT's supplemental brief fails to demonstrate that the amount in controversy exceeds $75,000. Instead, ADT points to disputes between it and other non-party defendants as well as the dispute between Madison and Aviles. Doc. 49, Pl.'s Suppl. Br., 2–5. ADT asks the Court to assume that Madison's "likely intent [is] to pursue the entirety of [her] monetary damages . . . from a different defendant with deeper pockets – ADT[,]" *id.* at 5, but does not address why the damages Madison will seek against ADT are the same as those that Madison seeks against Aviles, or whether Madison has legitimate legal avenues to pursue "the entirety of" those damages against ADT. *See generally id.* ADT offers three grounds upon which it claims the amount in controversy is sufficient: (1) "Madison is unwilling to settle her dispute with ADT below the jurisdictional limit"; (2) "Nearly identically situated Plaintiffs demand $1 million"; and (3) "ADT is now a defendant in the underlying state court action, in which [Madison] demand[s] thirteen categories of damages." Doc. 49, Pl.'s Suppl. Br., 2–4. The Court addresses each ground, in turn.

First, Madison's unwillingness to accept a settlement offer below $75,000 does not satisfy the amount-in-controversy requirement for this dispute by a preponderance of the evidence. ADT claims that it offered Madison "$50,000 for full and final settlement of her claims against ADT" and that

Madison did not respond. Doc. 49, Pl.'s Suppl. Br., 3. ADT argues that, based on Madison's non-responsiveness and her claims against Aviles, "common sense dictates that Ms. Madison will ultimately seek an arbitration award against ADT far in excess of $75,000." *Id.* However, a settlement agreement is a contract. *BP Expl. & Prod., Inc. v. Claimant ID 100094497*, 910 F.3d 797, 801 (5th Cir. 2018). And under Texas law, "[p]arties are free to contract . . . ." *Salas Realty LLC v. Transp. Ins. Co.*, 425 F. Supp. 3d 751, 756 (N.D. Tex. 2019) (citing *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 475 (Tex. 2016)). Therefore, Madison was free to settle—or not settle—with ADT, regardless of the value of her potential claims against ADT. The Court will not speculate as to Madison's reasons for not responding to ADT's settlement offer and does not find that her non-responsiveness demonstrates that the amount in controversy exceeds $75,000.

Second, the fact that "[a]nother one of the 220 affected ADT customers . . . sued ADT in Texas state court" for "over $1,000,000," Doc. 49, Pl.'s Suppl. Br., 3–4, has no bearing on the amount-in-controversy determination in this case. In order to compel arbitration, the Court must have jurisdiction over the underlying controversies. *Vaden*, 556 U.S. at 62. As discussed, the underlying controversies in this case are the subpoena dispute and the threat of litigation *between ADT and Madison*. ADT, therefore, must show that amount in controversy is sufficient between it and Madison—not between it and a non-party litigant in a wholly separate state-court case. *See id.*

Third, ADT's intervention into the state-court action does not grant this Court subject-matter jurisdiction over the underlying dispute. ADT may be correct that "intervention under Texas civil procedure makes the intervenor a party for all purposes," Doc. 49, Pl.'s Suppl. Br., 4, but ADT cites no authority to support its assertion that its intervenor status permits it to assume that damages asserted against a separate defendant are also asserted against ADT for purposes of subject matter

jurisdiction. In Madison's complaint, she seeks thirteen categories of damages only against Aviles. *Id.* ADT does not assert that Madison has made claims against ADT, that she has invoked doctrines of respondeat superior or joint-and-several liability, or that any other reason exists to make ADT liable for the damages claimed only against Aviles in that case. *See generally id.* ADT, therefore, cannot claim the damages asserted against Aviles simply because ADT chose to intervene in the state-court case. Therefore, ADT has failed to demonstrate that the amount in controversy exceeds $75,000.

In sum, the Court finds that it lacks subject matter jurisdiction to grant ADT's § 4 petition because it lacks subject matter jurisdiction over the underlying subpoena and threat-of-litigation disputes.

ADT claims that the Madison is "attempting to circumvent [her] contractual promise to arbitrate . . . by filing suit against [Aviles] and attempting to use that 'lawsuit' as a means to conduct discovery against ADT in Texas state court." Doc. 43, Pl.'s Resp., 11. If that is true, ADT is not without recourse. *See Vaden*, 556 U.S. at 71. In *Vaden*, the Supreme Court found that although the district court lacked subject matter jurisdiction over the underlying contract dispute—and thus lacked jurisdiction to compel arbitration under the FAA—the petitioner could seek to have the arbitration agreement enforced in the court where the contract dispute was heard because "[u]nder the FAA, state courts as well as federal courts are obliged to honor and enforce agreements to arbitrate." *Id.* While this Court does not have jurisdiction to compel arbitration of the state-court discovery process, ADT may move to compel arbitration or may otherwise seek a protective order in the court with jurisdiction over the discovery process.

IV.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** Madison's Second Amended Motion to Dismiss (Doc. 42), **DENIES** ADT's Motion to Compel Arbitration (Doc. 19), and **DISMISSES** ADT's Second Amended Petition for Order Compelling Arbitration (Doc. 39).

**SO ORDERED.**

**DATED:** November 30, 2020.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE